## DOLHONDE v. TANGIPAHOA BANK & TRUST CO.
### No. 1305.

Court of Appeal of Louisiana.
First Circuit.
March 6, 1934.

Ellis & Ellis, of Amite, for appellant.

S. S. Reid, of Amite, and A. W. Spiller, of Hammond, for appellee.

MOUTON, Judge.

In October, 1895, the Bank of Amite City was organized by act of incorporation. Later its name was changed into that of the Amite Bank & Trust Company.

Plaintiff, F. E. Dolhonde, was a member of the board of directors and cashier of the Amite Bank & Trust Company for several years.

On the 19th of December, 1932, the board of directors of that bank unanimously adopted the following resolution:

"Whereas, due to the strained financial conditions generally prevailing in this State and Parish, which conditions have seriously affected the stability of this bank; and whereas, it is unsafe, inexpedient and hazardous to continue operations, and in order to conserve the interest of the depositors; Be it resolved by this Board of Directors that it hereby surrender control of its property and affairs to the State Bank Commissioner of the State of Louisiana to take effect immediately."

Dolhonde was a member of the board of directors of the bank and also its cashier.

Acting on this resolution, J. S. Brock, state bank commissioner, closed the bank and addressed a petition to the district court for the parish of Tangipahoa, alleging that after investigation he found the business of the bank unsafe and unsound, and for the protection of the depositors prayed that it be placed in liquidation.

The court, complying with the demand of the commissioner, confirmed him as ex officio liquidator of the bank, under the provisions of Act 300 of 1910, p. 505.

The board of directors of the bank having appointed Martin Finnegan assistant liquidator, the court issued an order approving his appointment to assist J. S. Brock, commissioner, in selling and distributing the assets of the bank, in liquidation.

J. S. Brock, as ex officio liquidator, and Martin Finnegan, assistant judicial liquidator, with the approval of the stockholders of the Amite Bank & Trust Company, to avoid the usual process ordinarily required in the regular liquidation of the affairs of a bank, and for the alleged advantage of all parties concerned, particularly for the benefit of the depositors, petitioned the court for permission to sell the property of the bank to the Tangipahoa Bank & Trust Company.

The demand of the liquidators was granted by the court authorizing them to sell all the property and assets of the Amite Bank & Trust Company to the Tangipahoa Bank & Trust Company upon the assumption by that bank of all the deposits of the Amite Bank & Trust Company; also of its bills payable, debts, and liabilities, in liquidation.

On December 22, 1932, a sale of all the property of the Amite Bank & Trust Company was made by the liquidators to the Tangipahoa Bank & Trust Company, wherein the purchasing bank assumed the payment of the debts and liabilities of the Amite Bank & Trust Company, as was authorized under the order of the court.

The record shows that plaintiff was employed as cashier of the Amite Bank & Trust Company on November 24, 1932, for one year from that date, at a salary of $2,100 per year.

He was entitled by this contract to a salary for one year at the amount stated, as against the Amite Bank & Trust Company.

After the sale of the assets of the Amite Bank & Trust Company, plaintiff served the Tangipahoa Bank & Trust Company as cashier, and was serving as such when, on January 1, 1933, he was discharged from service.

Plaintiff alleges that he was paid by the Tangipahoa Bank & Trust Company the sum of $525, leaving as balance due him on his salary, of $2,100, $1,575, for which he is suing the Tangipahoa Bank & Trust Company, defendant herein.

The Tangipahoa Bank & Trust Company entered into no contract with plaintiff to pay him a salary for one year. The claim for the balance of his salary of $2,100, which the Amite Bank & Trust Company had obligated itself to pay him on its contract, is based on the alleged assumption in the sale to the defendant bank of the debts and liabilities of the Amite Bank & Trust Company.

 The dissolution of a corporation is either de facto or by law.

"A de facto dissolution means that dissolution which takes place in substance and in fact, when the corporation by reason of its insolvency, or for other reasons, suspends all of its operations and goes into liquidation without availing itself of the statutory procedure provided for that purpose." 14a C. J. p. 1081.

In this case, as appears from the above resolution of the board of directors of the Amite Bank & Trust Company, it surrendered the control of its property and affairs and placed them in the hands of the state bank commissioner, and to be immediately effected.

The bank, by reason of its insolvency, actually suspended its operations. This amounted to a de facto dissolution, under the authority above cited. It might be said in thus going into liquidation, the statutory procedure was not followed and that it did not effect a legal dissolution. The fact is, however, that after the adoption of that resolution by the bank, Brock and Finnegan, its liquidators by appointment of the court, and upon application of the stockholders of the bank and to avoid the usual delays in ordinary liquidation and for the advantage of depositors, in-

cluding other parties, obtained an order of court authorizing the sale of the property of the bank, to effect the liquidation of its affairs. These proceedings were tantamount to the regular statutory procedure usually followed for a legal dissolution of a banking institution. The selling of the assets of the bank under the proceedings followed in this case effected a complete dissolution of that bank.

Its dissolution as a matter of fact and of law was therefore complete.

The dissolution of a corporation puts an end to its existence, 14a C. J. p. 1149; and is equivalent to the death of a natural person, Imperial Film Exchange v. General Film Co. (D. C.) 244 F. 985, 987:

In this case, the contract of plaintiff with the Amite Bank & Trust Company for the term of one year was undoubtedly entered into "on the basis of the continued existence" of that bank to which it had reference.

As well said in 13 C. J. p. 643:

"The subsequent perishing of the person or thing, or cessation of existence of the condition, will excuse the performance, a condition to such effect being implied in spite of the fact that the promise may have been unqualified."

Here, when the dissolution of the bank was effected, as it ceased to exist, performance of the agreement could not be exacted; such a condition being implied in the contract between plaintiff and the Amite Bank & Trust Company. From this rule of law, it follows that the obligation the bank had incurred to pay plaintiff a salary for the term of one year had been extinguished by the effect of its dissolution. Hence, the bank was not liable and owed no debt to plaintiff for the balance claimed on his salary for the unexpired term of his contract. As the amount so claimed by plaintiff was not a debt or liability of the bank, the purchasing bank, Tangipahoa Bank & Trust Company, could not assume a debt or liability which had no existence. Therefore, the stipulation in the sale about the assumption of the debts and liabilities of the Amite Bank & Trust Company may be binding as to debts then existing, but can have no such effect in reference to the claim herein asserted by plaintiff, as it had been extinguished before the execution of the sale.

The authority, above cited, and the reason, above given, are in line with what is said in Ruling Case Law, vol. 7, § 448, as follows:

"The prevailing view is that where the insolvency of the corporation occurs and the court takes jurisdiction of the assets thereof and administers them under a receivership, there is no breach of a contract, as between the corporation and its administrative or executive officers in respect of contracts pertaining to their salary for the unexpired term of the office held by them after the receivership.".

It may be argued that in the instant case there was no receivership and consequently no administration of the assets by the court through a receiver. The facts herein show, however, that the assets were placed in the hands of the liquidators for administration and settlement. In the case where a receiver is appointed, the doctrine is, if we remember correctly, that the obligations which are incurred by the defunct corporation under its contracts are by authority of the state canceled and annulled. We do not see why the same rule should not apply where a bank is closed, ceases operation, and goes in the hands of the state bank commissioner by order of court, and all of its assets are disposed of under that order, particularly for the benefit of its depositors.

We find that under the rule above cited from R. C. L., the contract between the Amite Bank & Trust Company was not breached and that plaintiff could have no right to the balance claimed for the unexpired term as cashier of that bank.

In 1895, the Amite City Bank was organized. In article 5 of its charter, we find that all the officers and employees of the bank, whose salaries were fixed by the board, held their positions "at the pleasure of the board." This bank, later, evolved into the Amite Bank & Trust Company, the institution in question, but there occurred no repeal of the rule above referred to; hence, plaintiff, as its cashier, was subject to that regulation.

It is axiomatic that the charter of a corporation is its supreme law and that its provisions cannot be set aside by its board of directors. By the resolution of the bank, hereinabove reproduced, it will be noted that it surrendered the control of its property and affairs to the state bank commissioner and ceased operations. This resolution was voted unanimously by the board of directors, of which plaintiff was then a member, and also cashier.

This ceasing of operations made it impossible for plaintiff to continue in the service of that bank as its cashier for the unexpired term of his contract, and necessarily plaintiff was dismissed from service.

Plaintiff was holding his position as cashier at the pleasure of the bank, under its charter, and in ceasing its operations, plaintiff was automatically dismissed from service, a power which the bank had the right to exercise. Besides, plaintiff voted for that resolution, made no claim for any balance for the unexpired term under·his contract, and cannot now assert any rights for the recovery of any such claim, particularly against the defendant, a different banking institution which had no connection with plaintiff or the Amite Bank & Trust Company, at that time. Even if plaintiff had, when he voted for the resolution, made any reservations of the rights for which he is now contending, he could not, for the reasons above stated, recover against defendant bank in these proceedings. Plaintiff, it is true, after the dissolution of the Amite Bank & Trust Company, was in the service of defendant bank, as cashier, and was paid by the month; but, as heretofore stated, there is no proof whatsoever that he had been employed by defendant bank by the year or for the unexpired term of service for which the other bank had obligated itself. There is certainly no custom or law which fixed the term of service by the year or month resulting from the fact that plaintiff was serving as cashier in the defendant bank; hence, the Tangipahoa ·Bank & Trust Company, defendant bank, had the right to· dismiss plaintiff as cashier, at its option or will. Russell v. ·White Oil Corporation, 162 La. 9, 110 So. 70.

Upon dismissal, plaintiff had no right to recover the balance demanded for the unexpired term of the contract he had entered into with the Amite Bank & Trust Company.

His demand was correctly rejected.

Judgment affirmed.